UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Christopher Behlau

    v.                                                    Civil No. 20-cv-350-JD
                                                          Opinion No. 2021 DNH 052

Tiger Tiger Productions, LLC

O R D E R

Christopher Behlau brought suit against Tiger Tiger Productions, LLC. ("Tiger"), a film production company, alleging that Tiger breached the parties' loan agreement. Tiger moves for summary judgment on the ground that Behlau's claim is barred by the statute of limitations. Behlau objects to summary judgment.

Standard of Review

"Summary judgment is appropriate when the moving party shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Joseph v. Lincare, Inc., --- F.3d ---, 2021 WL 791615, at *6 (1st Cir. Mar. 2, 2021) (quoting Fed. R. Civ. P. 56(a)).  In making that determination, the court construes the record in the light most favorable to the nonmoving party. Thompson v. Gold Medal Bakery, Inc., --- F.3d ---, 2021 WL 791610, at *5 (1st Cir. Mar. 2, 2021).  To avoid summary judgment, the nonmoving party "must adduce specific facts showing that a trier of fact

could reasonably find in his favor" and "cannot rely on conclusory allegations, improbable inferences, acrimonious invective, or rank speculation." Id.

## Background

Behlau loaned $150,000 to Tiger to produce a documentary film about Bengal tigers. The parties' dispute, for purposes of the motion for summary judgment, is whether Behlau and George Butler, Tiger's single member, amended the loan agreement. If the agreement was amended, the loan was due in March of 2013, which Tiger contends means that the breach of contract claim is beyond the limitations period. If the agreement was not amended, there was a five-year period for repayment, making the loan due in April of 2017, within the limitations period.

Behlau and Butler agreed to the loan and its terms in April of 2012 through email communications.[1] The agreement included a five-year repayment term. The agreement also included a provision that allowed either party the option to convert the loan obligation into units of interest in a future offering to investors.

---

[1] Although there may have been dispute in the past about whether an agreement was reached in April of 2012, for purposes of the pending motion for summary judgment, the parties do not dispute the April agreement.

2

Following the April agreement and loan, Behlau was involved in Tiger's fundraising and became concerned about whether his loan would be repaid. On October 20 and 24, 2012, Behlau and Butler met in New York to discuss Behlau's proposal that he would not convert the loan to equity interest in Tiger and that instead of a five-year term for repayment, he would be repaid on commencement of filming. Butler told Behlau to put his proposed amendments in writing. In December, Behlau sent Butler a letter that is dated November 1, 2012, outlining the proposed amended agreement.[2] The proposed terms were that he opted not to convert the loan into equity in Tiger and that the loan was due to be repaid no later than the commencement of filming in the Tiger documentary project. He also included a promissory note. The letter stated that if Butler agreed to the terms, he would indicate his agreement by signing the promissory note and the letter. Butler did not sign the November 1 letter or the note.

Filming of the Tiger movie began in March of 2013. Butler did not repay the loan upon commencement of filming or thereafter. Behlau met Butler on April 2, 2013, in Bangladesh, where Behlau raised their October meetings and his proposal to amend their agreement. Butler denied knowledge of such an agreement. Butler offered different repayment terms, but Behlau

---

[2] Behlau states that he sent the letter to Butler in December of 2012, although the letter is dated November 1, 2012.

3

did not agree.  Behlau never received a proposal from Butler in writing.

Behlau sought repayment of the loan and was represented by Attorney LynnAnn Klotz for that purpose.  Klotz sent a letter, dated July 25, 2013, to Butler's attorney, seeking repayment.  In the letter, Klotz stated that the most pressing issue was repayment of the loan Behlau made to Tiger.  She reviewed the history of Behlau's dealings with Butler from April of 2012, through October of 2012, to July of 2013.  Klotz stated that during the meeting between Behlau and Butler on October 20, 2012, in New York, "our clients agreed that the Loan would be repaid no later than commencement of principal photography of the Film."  Doc. 16-3, at *2.  She further stated that "[o]n December 20, 2012, [Butler] was provided with written confirmation of this conversation (the 'Non-convert Letter', and, the 'Promissory Note'), copies of which have been previously provided to you."  Id.  Klotz stated that Butler continued to assert that Behlau converted the loan into equity in Tiger and also continued to try to convince Behlau to agree to that change.  She provided terms to settle the repayment dispute.  That effort was unsuccessful.

4

Behlau states that he and Butler continued to try to come to terms about repayment of the loan. Butler continued his efforts to convince Behlau to convert the loan to an equity interest. No further agreement was reached.

## Discussion

Behlau alleges in the complaint that Tiger breached the loan agreement by not repaying his loan within five years of April of 2012, that is, by April of 2017. Tiger moves for summary judgment, arguing that the loan agreement was amended to require payment upon commencement of filming, which occurred in March of 2013. Because the failure to pay in March of 2013 occurred outside the limitations period, Tiger contends the breach of contract claim is barred by the statute of limitations.

A.  Choice of Law

Tiger contends that the suit is untimely under either New York's six-year statute of limitations or New Hampshire's three-year statute of limitations, without engaging in a choice-of-law analysis. Behlau does not address the potential issue of the applicable statutory limitations period. When a question arises as to which law governs, this court employs New Hampshire's choice-of-law principles and must determine whether the relevant

New Hampshire law conflicts with the law of other interested states. Caldwell v. Atrium Med. Corp., 2019 WL 4600382, at *3 (D.N.H. Sept. 23, 2019). A conflict exists only if another state's law would change the outcome. Id.

In this case, although the limitation periods are different, the outcome would be the same under New York and New Hampshire law. If the loan agreement was amended in October of 2012 and the breach occurred in March of 2013, the suit filed in March of 2020 would be untimely under both New York and New Hampshire law. If, on the other hand, the agreement was not amended and the original five-year term of repayment applies, the breach did not occur until April of 2017, and the suit would be timely under both New York and New Hampshire law. Therefore, as no conflict exists, the court will apply New Hampshire law.

Under New Hampshire law, the limitations period for a breach of contract claim begins when the contract is breached. Coyle v. Battles, 147 N.H. 98, 100 (2001). The applicable limitations period is three years. RSA 508:4; Coyle, 147 N.H. at 100. There is no issue in this case that implicates the discovery rule in RSA 508:4.

B.  When Did Breach Occur

As stated above, the date of the breach depends on whether the original April 2012 loan agreement remained in effect or

6

whether the agreement was amended in October of 2012.  Tiger contends that the agreement was amended in October of 2012 to require repayment in March of 2013, so that the breach occurred then.  In support, Tiger primarily relies on Attorney Klotz's statement in her letter of July 2013, as an admission by Behlau. Behlau disputes the admissibility of the statement and contends that the evidence shows that no meeting of the minds occurred in October of 2012 to amend the agreement and change the due date to March of 2013.

For purposes of summary judgment, "[t]o succeed in showing that there is no genuine dispute of material fact, the moving party must direct us to specific evidence in the record that would be admissible at trial." Ocasio-Hernandez v. Fortuno-Burset, 777 F.3d 1, 4 (1st Cir. 2015).  Using that evidence, the moving party may "negate[] an essential element of the non-moving party's claim" or "demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial."  Id. at 5.  Summary judgment is appropriate if the moving party shows that the plaintiff's claim is "deficient in vital evidentiary support."  Id.

   1. Klotz's Letter

Tiger contends that Klotz's statement about repayment of the loan in the July 2013 letter to Tiger's counsel is an

7

admission by Behlau that the agreement was amended and the due date was changed to March of 2013.[3] Behlau contends that Klotz's letter was a demand that was sent as part of negotiations to settle the dispute about repaying the loan and argues that the statement is inadmissible under Federal Rule of Evidence 408. In response, Tiger argues that Behlau is bound by the admission, which is admissible under Federal Rule of Evidence 801(d)(2).

      a.   Demand for Purposes of Settlement

Federal Rule of Evidence 408(a) prohibits parties from offering as evidence "a statement made during compromise negotiations about the claim" for the purpose of "prov[ing] or disprove[ing] the validity . . . of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Tiger does not dispute that the statement in the letter was made as a part of settlement negotiations. Instead, Tiger argues that the statement is not barred by Rule 408 because it is not a concession by Behlau.

To show that evidence of settlement negotiations, which are not concessions, may be admissible, Tiger relies on Gelinas v.

---

[3] Klotz wrote, referring to the meeting in October of 2012: "[O]ur clients agreed that the Loan would be repaid no later than commencement of principal photography of the Film." Doc. no. 16-3, at *2.

8

Metro. Prop. & Liab. Ins. Co., 131 N.H. 154, 166 (1988).  There, the New Hampshire Supreme Court considered a claim that the insurance company was negligent in failing to settle a claim in an underlying suit within the policy limits so that the company was liable for the verdict in excess of the policy limit, a so-called Dumas claim.  The court considered whether evidence of the settlement negotiations was admissible under New Hampshire Rule of Evidence 408.  Because the insurance company's actions during settlement negotiations were at issue for purposes of the Dumas claim, evidence of the negotiations was admissible.  Id. at 165-66.

The decision in Gelinas is inapplicable here.  This is not a Dumas action, and Gelinas was decided under the New Hampshire rule.  Therefore, it has no persuasive effect here.  Federal Rule of Civil Procedure 408 governs in these proceedings.  Rule 408 focuses on the proposed use of statements, which were made during settlement negotiations, and prohibits the use of statements to prove or disprove the validity of a claim or to impeach by a prior inconsistent statement.[4]

---

[4] In fact, the limitation that would exclude factual statements, in contrast to concessions, from Rule 408 was included in a proposed version of the rule and was rejected. Fed. R. Evid. 408, Advisory Committee Notes; see also 2 McCormick on Evidence, § 266 8th ed. (2020).

Tiger also argues that statements made during settlement negotiations are admissible to prove the intent of the parties and to prove the terms of an agreement. In support, however, Tiger cites Catullo v. Metzner, 834 F.2d 1075, 1078-79 (1st Cir. 1987). In Catullo, the plaintiff's claim was breach of the parties' settlement agreement. Id. at 1078. The court held, not surprisingly, that Rule 408 does not apply when the claim is breach of the settlement agreement. Id. at 1079. This case does not involve a claim of breach of a settlement agreement.

For purposes of summary judgment, Tiger uses Klotz's statement in the letter, attributed to Behlau, to show that the parties amended the agreement. As such, Tiger uses the statement to impeach Behlau's evidence that the agreement was not amended and to show that the statute of limitations bars the claim. That is not a permissible use under Rule 408. Therefore, Klotz's statement is not admissible under Rule 408.

    b.  Admission

Tiger argues, nevertheless, that Klotz's statement is an admission by Behlau that the amended agreement is the operative version of the agreement. Tiger contends that the statement is admissible as an admission by a party opponent under Federal Rule of Evidence 801(d)(2). Tiger also argues that Behlau is precluded from contradicting Klotz's statement.

10

With respect to admissibility, the hearsay rule broadly excludes out-of-court statements offered to prove their truth. Fed. R. Evid. 801(c). An exception to the hearsay rule exists for a statement made by an opposing party, in certain circumstances, when the statement is offered against that party. Fed. R. Evid. 801(d)(2). There is no argument in this case, however, that Klotz's statement is hearsay, and there is no effort to exclude the statement on that basis. Therefore, the exception to the hearsay rule is inapplicable here.

Even if the Klotz's statement were admissible, it would not have the evidentiary value that Tiger asserts.[5] Broadly speaking, counsel's statements made on behalf of a client may be admissions and introduced to support a motion for summary judgment. See Cerqueira v. Cerqueira, 828 F.2d 863, 865 (1st Cir. 1987) (statement by party's counsel conceding facts in brief opposing summary judgment deemed admission). Party admissions, however, have different probative value. Keller v. United States, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995); 2 McCormick on Evidence § 254. While judicial admissions are conclusive, ordinary admissions can be contradicted by other

---

[5] As stated above, the statement is not admissible under Rule 408. Rule 801(d)(2) does not make the statement admissible. It is not clear whether Tiger argues that the statement, as an admission, is nevertheless admissible based on another theory. To the extent Tiger makes that argument, it is not sufficiently developed to be addressed.

11

evidence.  United States v. Raphelson, 802 F.2d 588, 592 (1st Cir. 1986).

A judicial admission is a concession or statement made in a pleading, a filing in that case, or a stipulation by a party or counsel as part of the case, which is conclusive in that proceeding and has the effect of withdrawing the admitted fact from contention.  Martinez v. Bally's Louisiana, Inc., 244 F.3d 474, 476 (5th Cir. 2001); see also Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592-93 (2013); Lima v. Holder, 758 F.3d 72, 79 (1st Cir. 2014).  An ordinary admission is a statement or assertion that has been made for another purpose and is introduced as evidence of a fact.  Martinez, 244 F.3d at 476. An ordinary admission may be explained or controverted by the party who made it.[6]  Id. at 477.

As provided above, Klotz's statement about the amended agreement is not admissible under Rule 408(a).  Even if the statement were admissible, it would be an ordinary admission that the amended agreement was the operable agreement.  Behlau

---

[6] Tiger mistakenly argues that Behlau cannot use his affidavit to explain Klotz's statement.  The rule cited, however, applies when a party attempts to contradict clear and unambiguous deposition testimony with a subsequent affidavit for purposes of opposing summary judgment.  See Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 26 (1st Cir. 2002).  That rule does not apply here.

is entitled to contradict the statement with evidence to the contrary.

### 2. Evidence of Amendment of Agreement

"A valid, enforceable contract requires offer, acceptance, consideration, and a meeting of the minds." Durgin v. Pillsbury Lake Water Dist., 153 N.H. 818, 821 (2006).  A meeting of the minds occurs only when the parties have the same understanding of the contract terms and manifest an intent to be bound by the contract.  Id.  Assent to a contract cannot be subjective or merely mental assent without manifestation, and instead the parties must establish that they agreed to be bound by writing or conduct.  Id.

Behlau sent Butler the proposed amended agreement in December of 2012, after their meeting in October of 2012. Butler did not sign the proposed agreement.  He also did not perform under the terms of the proposed amended agreement to show, by conduct, that he agreed to its terms.  For example, Butler continued to ask Behlau to accept equity in the company in lieu of payment and did not pay back the loan in March of 2013 when filming began.

Therefore, the evidence does not show that the April 2012 agreement was amended.

C.  Timely

Tiger has not shown that the loan agreement was breached more than three years before Behlau brought suit. Therefore, the claim is not barred by the applicable statute of limitations.

## Conclusion

For the foregoing reason, Tiger's motion for summary judgment (document no. 16) is denied.

As the motion for summary judgment is resolved against Tiger, the parties are encouraged to use their best efforts to resolve this case before the court and the parties expend the considerable time and effort that will be necessary for further litigation.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

March 16, 2021

cc: Counsel of record.